# EXHIBIT M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - -x

ALBERTO HIGGS,

                    Plaintiff,

                                    23-cv-03943(DG)(SIL)

               -against-

THE VILLAGE OF FREEPORT, ALL COUNTY HOOK UP
TOWING, INC. d/b/a ALL COUNTY TOWING &
RECOVERY, JOSEPH CALVAGNO, individually,
OFFICER JOHN DOE #1, individually, AND
OFFICER JOHN DOE #2, individually,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - -x

                              1757 Merrick Avenue
                              Merrick, New York

                              February 21, 2024
                              2:30 p.m.


               DEPOSITION of JOSEPH

CALVAGNO, one of the Defendants in the

above-entitled action, held at the above time and

place, pursuant to Notice, taken before JoAnn

O'Loughlin, a Notary Public of the State of New

York.



                    *    *    *

APPEARANCES:

CAMPANELLI & ASSOCIATES, P.C.
Attorneys for Plaintiff
1757 Merrick Avenue
Merrick, New York 11566

BY:  ANDREW J. CAMPANELLI, ESQ.


LAW OFFICE OF VINCENT D. McNAMARA
Attorney for Defendants
INCORPORATED VILLAGE OF FREEPORT
s/h/a THE VILLAGE OF FREEPORT,
OFFICER JOHN DOE #1 AND JOHN DOE #2
1045 Oyster Bay Road
East Norwich, New York 11732

BY:  HELEN M. BENZIE, ESQ.


QUATELA CHIMERI PLLC
Attorneys for Defendants
ALL COUNTY HOOK UP TOWING, INC.
d/b/a ALL COUNTY TOWING & RECOVERY
and JOSEPH CALVAGNO
888 Veterans Memorial Highway
Hauppauge, New York 11788

BY:  ALEXANDER E. SENDROWITZ, ESQ.


*        *        *

3

FEDERAL STIPULATIONS

IT IS HEREBY STIPULATED AND AGREED by and between the attorneys for the respective parties herein that the sealing, filing and certification of the within deposition be waived; that the original of the deposition may be signed and sworn to by the witness before anyone authorized to administer an oath, with the same effect as if signed before a Judge of the court; that an unsigned copy of the deposition may be used with the same force and effect as if signed by the witness, 30 days after the service of original & 1 copy of the same upon counsel for the witness.

IT IS FURTHER STIPULATED AND AGREED that all objections except as to form, are reserved to the time of trial.

*    *    *

4

(Plaintiff's Exhibit 1, copy of Freeport Police Department Motor Vehicle Impound Worksheet, was marked for identification.)

(Plaintiff's Exhibit 2, copy of All County Towing letter to Alberto T. Higgs dated November 16, 2020, was marked for identification.)

(Plaintiff's Exhibit 3, copy of All County Towing letter to Albert T. Higgs dated November 16, 2020 with attachment, was marked for identification.)

(Plaintiff's Exhibit 4, copy of All County Towing & Recovery tow slip dated 11/10/20, was marked for identification.)

(Plaintiff's Exhibit 5, copy of All County Towing & Recovery Release Invoice dated 10-Nov-2020, was marked for identification.)

(Plaintiff's Exhibit 6, copy of All County Towing & Recovery Release Invoice dated 10-Nov-2020, was marked for identification.)

(Plaintiff's Exhibit 7, copy of

5

VILLAGE OF FREEPORT Contract and Specifications For 2018 TOWING OF VEHICLES, was marked for identification.)

J O S E P H   C A L V A G N O, the witness herein, having first been duly sworn by the Notary Public, was examined and testified as follows:

EXAMINATION BY MR. CAMPANELLI:

Q.    What is your name?

A.    Joseph Calvagno.

Q.    What is your address?

A.    Sixty-six East Merrick Road, Freeport, New York 11520.

Q    Good afternoon, Mr. Calvagno.  My name is Mr. Campanelli.  I'm going to be asking you a number of questions.  In answering my questions, I ask that you follow some instructions.

As you can see, to my left is a stenographer taking down every word that's said. So for her benefit, when I ask you a question you must answer orally, she can't take down the nod of a head side to side for no or up and down for yes, understood?

A    Okay.

CALVAGNO

Q        Also for her benefit, if I pose a question, even if you think you know the answer before I finish the question, I would ask you to allow me to finish my question before you start to answer because she can't down both of us at the same time.

Finally, if at any time you don't understand a question I ask, please tell me that you don't understand the question and I will employ my best efforts to make it clear for you; do you understand?

A        Yes.

Q        If at any time you need a break, just say so, all I ask is that you don't take a break while a question is pending, you answer the question before you leave, understood?

A        Yes.

Q        Have you ever been deposed before under oath?

A        No.

Q        What is your occupation?

A        Tow and collision owner.

Q        When you say "owner," owner of what?

A        Of the business.

7

CALVAGNO

Q    When you say "the business," would that be All County Hook Up Towing, Inc.?

A    Yes.

Q    That's doing business as All County Towing & Recovery, correct?

A    Yes.

Q    Are you a shareholder of that corporation?

A    Yes.

Q    Are you the sole shareholder?

A    Yes.

Q    Are you director of that company?

A    No.

Q    Are you president, vice president?

A    President.

Q    Are there any other officers of the company?

A    No.

Q    How long have you been doing business as All County Hook Up Towing?

A    Since the start.  I believe it was 2001 we were incorporated.

Q    For the purposes of this deposition, I'm going to refer to your company All County

8

CALVAGNO

Hook Up Towing, Inc. as All County, is that okay?

A        Yes.

Q        So any time I say All County, I'm referring to that company.

Did there come a time when All County obtained a contract with the Village of Freeport to provide towing and/or storage services to the Village of Freeport?

A        Yes.

Q        How did you acquire that contract?

A        It was a bid system.

Q        What does that mean?

A        They put out an RFP, I think it's called and it goes out to the qualified vendors and you bid dollar amount that you're going to give back to the City.

Q        How do you transmit your bid to the Village?

A        Writing.

Q        So you submit something in writing essentially making an offer to the Village to provide towing and/or storage services?

A        Correct.

9

                    CALVAGNO

Q        When for the first time did you submit a bid to the Village of Freeport for towing services?

A        I believe it was '18, don't hold me to the exact year.

Q        Meaning 2018?

A        I believe so.

Q        How do you submit the bid in writing; do you physically drop it off, do you mail it in?

A        You drop it off or you can mail it in.

Q        At any time prior to dropping off the bid for 2018, did you have any conversations with anyone from the Village?

A        No.

         MR. SENDROWITZ:  Objection to form.

         You can answer.

A        Conversations pertaining to the bid?

Q        The bid, yes.

A        No.

Q        Do you provide towing services to anyone other than the Village of Freeport?

10

CALVAGNO

A    Yes.

Q    Do you provide services to other municipalities or individuals or who?

A    Both.

Q    Other than a municipality, when someone hires you to tow their vehicle, generally speaking, do you pay them for towing their vehicle or do they pay you?

A    They would pay us.

Q    Under what circumstances would your company enter an agreement to provide towing services and pay the customer other than having the customer pay you?

MR. SENDROWITZ:  Objection to form.

You can answer.

A    That's just how their paperwork's written in the contract.

Q    Whose paperwork?

A    The Village's.  That's how they do their contract.

Q    When you say "the Village's," you're refer to the Village of Freeport?

A    Correct.

11

CALVAGNO

Q    What about the City of Long Beach?

A    City of Long Beach has similar paperwork.  Different.  Every contract's different.

Q    So there came a time that your bid was accepted by the Village of Freeport?

A    Yes.

Q    How did you become aware that your bid had been accepted?

A    They sent us a letter of award.

Q    To your knowledge, were you the only towing contractor for that period for your contract?

(No response.)

Q    In other words, were you the only towing contractor they hired?

A    Correct, yes.

Q    Okay.

A    The Village of Freeport you're talking about?

Q    Yes.

A    Okay.

Q    I'm going to show you what's been marked today as Plaintiff's Exhibit 7.  It

12

CALVAGNO

appears to be a document entitled VILLAGE OF FREEPORT 2018 TOWING OF VEHICLES which looks to be an RFP as well as a contract.

I'm going to show it to your attorney first and then I'll show it to you.

(Handing.)

(Witness reviewing document.)

MS. BENZIE:  This was produced by ACT in some litigation, correct?

MR. SENDROWITZ:  I believe it was this litigation, but I don't know.

MS. BENZIE:  I want to confirm that that was produced by ACT.

MR. SENDROWITZ:  On the bottom of the Bates shorthand we put ACT and then the Bates number.

I can confirm that we have provided these particular documents in discovery. There is a cutoff with regard to the Bates number, itself; however, it does have the moniker of ACT, so I think it's safe to say that these were produced in discovery.

MR. CAMPANELLI:  In this action.

13

CALVAGNO

MR. SENDROWITZ:   In this action.

Q       Mr. Calvagno, I'm going to show you what has been marked as Plaintiff's Exhibit 7 and ask if you recognize that document.

(Witness reviewing document.)

A       This one?

Q       Yes.

A       Yes.

Q       What is it?

A       This is the package that goes out for bid or RFP I guess you would call it.

Q       Is there anything else in that document, please take your time and look through it?

(Witness reviewing document.)

A       No.  Nothing that I see.

Q       Just so I understand, this is a document that appears to be primarily typewritten, but there's handwriting in it as well, okay?

Do you see any handwriting in that document that's yours?

A       Yes.

14

CALVAGNO

Q    The typewritten portion of the document, was that something that was produced by the Village of Freeport?

A    Yes.

Q    The handwritten portion, was that handwriting yours?

A    Yes.

Q    So you took an RFP from Freeport in 2018, you filled in your own information and signed it and submitted that to the Village, correct?

A    Correct.

Q    The document that's before you as Plaintiff's Exhibit 7 is a copy of the completed RFP that you completed and submitted to the Village of Freeport, correct?

A    Yes.

Q    And they accepted it, correct?

A    When you say accepted . . .

Q    Well, you said they accepted your bid, correct?

A    Oh, yes.

Q    And that document contains the terms of your contract between your company, All

15

CALVAGNO

County and the Village of Freeport, correct?

A     Yes.

Q     That provides, among other things, how much you're allowed to charge for towing and storage, correct?

A     Yes.

Q     I'm going to ask you to turn to page 12 of the document.

Do you see in the middle of the page where it says RATE SCHEDULE?

A     Yes.

Q     Do you know what that paragraph indicates?

A     Indicates that the Village is going to show you a rate schedule that you're allowed to charge.

Q     So when entering a contract with the Village of Freeport, you agreed to a rate schedule for the charges that you would charge for towing and storage, correct?

A     Yes.

Q     And that schedule is attached to the last page of the document as Appendix A, correct?

16

                              CALVAGNO

A       Correct.

Q       The paragraph beneath that is entitled CONTRACT EXTENSION and this seems to indicate that the original contract was for three years, but that the Village had an option for extensions.

A       Correct.

Q       The original contract terminated on February 28, 2021, correct?

A       Yes.

Q       Did the Village of Freeport exercise its option to extend your contract?

A       I believe they did.

Q       Okay.

        Well, are you still providing towing services to the Village of Freeport?

A       No.

Q       When did you stop providing towing services to the Village of Freeport?

A       About three years ago, roughly.

        (Pause.)

A       I'm sorry, they didn't extend our contract.

Q       So it ended in 2021?

17

CALVAGNO

A      I'm thinking three years and the date that's here.

Q      So your contract with the Village of Freeport expired on February 28th of 2021; is that correct?

A      Yes.

Q      Please turn to page 13.

Do you see the handwriting that has the name of All County and then a date of 3/14/18?

A      Yes.

Q      Is that your handwriting?

A      No.

Q      Do you know who filled that in?

A      Yes.

Q      Who?

A      My office personnel.

Q      Who would that have been?

A      Craig.

Q      What was Craig's position?

A      Craig is . . . I mean he doesn't really have a title.

Q      Okay.  Please turn to page 14.

A      Yes.

18

CALVAGNO

Q      Do you see where it says:   Unit price per tow to be paid to the Village of Freeport for Towing and then someone hand wrote in $451.00 Per Tow?

A      Yes.

Q      Is that your handwriting?

A      Yes.

Q      Under the terms of your contract, each time you tow a car at the request of the Village of Freeport, your company pays the Village of Freeport $451 per tow, correct?

A      Correct.

Q      Why do you pay the Village instead of having the Village pay you?

A      That's how their contract works. It's a minimum bid of 450, I only bid a dollar.

Q      So for the duration of your contract, did your company, in fact, pay the Village of Freeport $451 every time you towed a vehicle for them?

A      Yes.

Q      Please turn to page 15.

Do you see the handwriting on that page?

19

CALVAGNO

A    Yes.

Q    Is that your handwriting?

A    The handwriting, no.

Q    Whose handwriting is it?

A    That's Craig.

Q    Do you see where it says PRINT NAME and there's the name Joseph Calvagno?

A    Yes.

Q    Did you write that?

A    No.

Q    Do you see the signature line and there appears to be initials?

A    Yes.

Q    Are those your initials?

A    Yes.

Q    Did you sign that?

A    Yes.

Q    Next to it, it says president, you see that?

A    Yes.

Q    Did you write president?

A    No.

Q    Were you president of All County as of March 14th of 2018?

20

CALVAGNO

A    Was I president?

Q    Yes.

A    Yes.

Q    Did you execute this agreement on behalf of All County on that date?

A    Yes.

Q    Please turn to page 22.

A    Okay.

Q    See in the paragraph one it states -- and I quote -- Such towing shall be provided upon the request of the Village Police Department or other Village departments, in circumstances described in Chapter 191 of the Village Code; do you see that?

A    Yes.

Q    Under this contract, did All County tow vehicles for the Village of Freeport?

A    Yes.

Q    How would you tow vehicles; who called who, how did it work?

A    Village Police Department would call our office.

Q    When you say the Village Police Department, would it be anyone from the police

21

CALVAGNO

department?

A    I wouldn't know.

Q    Who would know that?

A    The Village.

Q    Well, when you received a call, did they identify themselves as a police officer?

A    No, just Freeport Police.

Q    So it could be a secretary from the police department?

A    Correct.

Q    So basically your office would receive a call, come tow a car, right?

A    Yes.

Q    Who would receive those calls at All County?

A    A dispatcher or dispatchers.

Q    In 2018, who were your dispatchers?

A    Oh.

(Pause.)

A    I can't -- I'm not sure off the top of my head.

Q    Well, normally how many dispatchers did you have at any given time?

A    We could have had anywhere from

22

CALVAGNO

three to five.

Q      Okay.

A      That's phone answerers, not so much a dispatcher.  Dispatcher kind of dispatches the call to the truck.

Q      But you would have as many as three to five people who would receive the calls for the tow?

A      Correct.

Q      When a call came in for a tow, what happened next at All County?

A      They would take down information and then send a tow out.

Q      Under your contract, you'd have to send a tow out within 30 minutes, right?

A      I believe it was 20.

Q      So if the person who received it wasn't the dispatcher, would they convey the information to the dispatcher?

A      Yes.

Q      The dispatcher would then dispatch a truck to make the tow?

A      Correct.

Q      And they would do that by calling

23

CALVAGNO

over a radio one of your tow trucks?

A      Yes.

Q      In 2018, how many tow trucks did you have?

A      I would say 18.

Q      Okay.

A      Guessing.

Q      So when you received a call, they dispatched a tow truck, your tow truck would go and hook up the vehicle, correct?

A      Yes.

Q      And then they would tow it, correct?

A      Correct.

Q      Where did they tow it to?

A      Back to our storage facility.

Q      Which is located where?

A      We have 66 East Merrick Road and 4370 Austin Boulevard, Island Park.

Q      At any time did you get permission of the owner of those vehicles to tow their vehicle?

A      No.

Q      At any time did you get permission from the owners of those vehicles to store their

24

CALVAGNO

vehicles?

A    No.

Q    Turn to page 27, please.

See paragraph two which is entitled Response Log?

A    Yes.

Q    Under your contract with Freeport, was All County required to keep a response log?

A    Yes.

Q    Did you keep a response log?

A    Yes.

MR. CAMPANELLI:  I'm going to call for the production of the response logs.  I'll send you a formal request.

MR. SENDROWITZ:  If you could send me a request in writing, I'd appreciate that.

MR. CAMPANELLI:  Okay.

** INFORMATION REQUESTED AND/OR DOCUMENTS TO BE SUPPLIED:

Q    I want to go to paragraph number three, the Storage Log; do you see that?

A    Yes.

25

                              CALVAGNO

Q       Was All County required to keep a storage log?

A       Yes.

Q       Did it keep a storage log?

A       Yes.

Q       Do you still have the storage log?

A       I'm unsure.

MR. CAMPANELLI:   I'm going to call for the production of the storage log as well.

MR. SENDROWITZ:  If you'd follow up in writing, I'd appreciate that.

** INFORMATION REQUESTED AND/OR DOCUMENTS TO BE SUPPLIED:

Q       Look to paragraph six, do you see where it says Release of Impounded Vehicles?

A       Yes.

Q       See where it says:  The contractor shall not release any impounded vehicle without the vehicle owner providing a Release Form approved by the Village Police Department; you see that?

A       Yes.

26

CALVAGNO

Q    Do you understand what that sentence means?

A    Yes.

Q    What does it mean?

A    Means cannot release a vehicle without a police authorization letter.

Q    Who says you can't release it?

A    Freeport Police Department.

Q    So when you receive a call to tow a car at the request of the police department, under your contract with the police department, you were not permitted to release that vehicle --

MS. BENZIE:  Objection to the form.

MR. CAMPANELLI:  Okay.

Q    Under the policy, practices and procedures of All County, what was the process by which All County would release a vehicle after it had been towed and stored at the request of the police department?

A    It would be released when we got a release form from the person who came in with their name on it from the police department.

27

CALVAGNO

Q    So you could not release a vehicle unless and until you got a release form?

A    Correct.

Q    Do you know where the release form would come from?

MR. SENDROWITZ:    Objection to remember.

You can answer.

A    I believe the Village Police Department.

Q    Well, you've seen the release form before, correct?

A    Correct.

Q    Do the release forms indicate whose forms they were?

A    Yes.

Q    What do the release forms indicate to you, if anything?

A    Vehicle info and who to release the vehicle to.

Q    So someone was authorizing the release, your release of the vehicle to someone else, correct?

A    Correct.

28

CALVAGNO

Q    Who was authorizing the release of the vehicle?

A    Freeport Village.

Q    You couldn't release a vehicle that you towed at the request of the Village unless the Village authorized the release, correct?

A    Correct.

Q    Once you towed a vehicle at the request of Freeport, you would continue to hold it or store it on a continuing basis until you got that release, correct?

A    Yes.

Q    Under that contract, your contract with Freeport, you were entitled to charge for storage every single day that you held it until you got the release, correct?

A    Correct.

Q    But at no time prior to you releasing the vehicle had the owner of the vehicle ever agreed to pay those storage charges, correct?

A    Correct.

Q    Please turn to page 35.

MR. SENDROWITZ:  Off the

29

CALVAGNO

record.

(Discussion off the record.)

Q     Do you see the word typed Contractor?

A     Yes.

Q     And there's a thing that says By, it says title and their initials.

Are those your initials?

A     Yes.

Q     Did you initial that?

A     Yes.

Q     I'm going to show you what was previously marked on December 13th of 2023 as Plaintiff's Exhibit 4 and ask you if you recognize that document.

(Handing.)

(Witness reviewing document.)

A     You mean this exact document or just in general?

Q     Well, let's start with in general, do you recognize what the document is?

A     Yes, looks like an impound sheet from Freeport Police Department.

Q     Have you seen them before?

30

CALVAGNO

A    Yes.

Q    Does there come a time when someone in your employ is authorized to sign that form?

A    Tow truck driver has to sign this.

Q    So how does it come to pass that a tow truck driver signs one of these forms?

A    By the officer at the scene of impound.

Q    So with regard to the scene of impound, All County gets a call to go tow a vehicle, correct?

A    Yes.

Q    Your dispatcher sends one of your trucks to the scene they were called to go to?

A    Correct.

Q    What happens when they get there?

A    They go over the vehicle with the officer for damages and he produces this sheet, they sign it and tow it away.

Q    So somebody fills in the information about the vehicle, correct?

A    Yes.

Q    Is that the officer or your employee?

31

CALVAGNO

A        The officer.

Q        They would report the condition of the vehicle, lack of damages or damages to the vehicle, correct?

A        Right.

Q        Then the officer would ask your employee to sign the form?

A        Yes.

Q        Do you recognize the signature of the tow truck driver on that form?

A        No.

Q        When you tow a vehicle at the request of the Freeport Police Department --

MR. SENDROWITZ:  I'm just going to object just because Mr. Calvagno is a named defendant; when you say "you," are we referring to the entity or Mr. Calvagno?

MR. CAMPANELLI:  Withdrawn.

Q        When All County tows a vehicle at the request of the police department, how do they record that case at All County; is there a file number, do they use an impound number or do they assign some other number to that case or

32

CALVAGNO

tow?

A        It would usually go by the impound number or an invoice number I guess you could call it.

Q        Do you see a section on the form, the impound number's file?

A        Yes.

Q        And there's an impound number on that file?

A        Yes.

Q        On the form, do they also indicate the reason for the tow?

(Witness reviewing document.)

A        Yes.

Q        For example, on the form that's marked as Plaintiff's Exhibit 4, there's a section which has the word "scofflaw."

Would that be the location where they indicate the reason why the vehicle was towed?

A        Yes.

Q        Would your employer write that or the police department write that?

A        Police department.

33

CALVAGNO

Q    I'm going to show you what was previously marked as December 13th of 2023 as Plaintiff's Exhibit 5.  I'm going to ask if you recognize that document.

(Handing.)

(Witness reviewing document.)

A    Yes.

Q    What is it?

A    A Freeport Police release form.

Q    So is that the release form you had described earlier?

A    Yes.

Q    Do you know who that release form was issued by?

A    Person?

Q    Entity.

A    Freeport Police Department.

Q    To whom was the release form addressed?

A    Addressed to All County Towing.

Q    So that was a release form prepared directing you to release the vehicle which is the subject of the form, correct?

A    Correct.

34

CALVAGNO

Q    What vehicle was that?

A    Fifteen Chrysler 200.

Q    Are you familiar with the fact that that vehicle described in the document is the vehicle which is the subject of this lawsuit?

A    Yes.

Q    The release form directs All County to release the vehicle to Alberto Higgs, correct?

A    Yes.

Q    The named plaintiff in this action, correct?

A    Correct.  I was reading the release form, I didn't see his name on there.

(Attorney indicating.)

A    Oh, up here.  Sorry.  Just want to be clear, that's all.

Q    When you receive -- when I say "you" I'm talking about All County -- when All County receives a release form of the type before you as Plaintiff's Exhibit 5, when you would receive a release form, would All County release the vehicle simply upon receiving the release form or was the owner of the vehicle required to do

35

CALVAGNO

something else before you would release it?

A    They would have to pay their balance of owed -- of incurred monies.

Q    When you say "they would have to pay their balance," are you referring to the balance they owed to the police department or to All County?

A    All County.

Q    So if the police department sent All County a release form directing All County to release a specific vehicle, All County would not release that vehicle unless and until the owner paid amounts sought by All County for having towed and stored the vehicle, correct?

A    Yes.

Q    If the owner refused to pay the towing and storage to All County, All County would not release the vehicle to them, correct?

A    Yes.

Q    What, if anything, did you believe gave you the right to hold the vehicle unless and until the vehicle owner paid you for the towing and storage?

MR. SENDROWITZ:  Objection to

36

CALVAGNO

form.

You can answer.

A       The way the contract -- just following the contract.

Q       The release form has a release date; is that correct?

A       Yes.

Q       The release date on this particular document is November 24, 2020, correct?

A       Yes.

Q       At any time prior to November of 2020, did Mr. Higgs, the plaintiff in this action, ask All County to tow his vehicle?

A       Prior to November of 2020?

Q       Yes.

A       I wouldn't know.

Q       At any time did Mr. Higgs ask All County to store his vehicle?

A       I wouldn't know.

Q       At any time prior to the date of the release, did Mr. Higgs ever agree to pay for All County having towed his vehicle?

A       Unknown.

Q       Well, do you have any basis to

37

CALVAGNO

believe that Mr. Higgs had agreed with you or anyone else at All County to pay you for towing or storing his vehicle?

A    From this incident?

Q    At any time.

A    I wouldn't know.

Q    Who would know that?

A    If he called us for a prior service prior to this, he might have agreed to pay us for a tow.  Regarding this matter, this matter, he probably did not agree to pay for.

Q    So for this matter, he had not agreed to pay All County or you individually for towing or storage, correct?

A    To my knowledge, no.

Q    But not withstanding same, All County would not release his vehicle to him unless and until he paid for the towing and storage, correct?

A    Once he produced a release form, correct, by the contractor.

Q    How much did he pay All County for towing and storage?

A    Unknown to me.

38

CALVAGNO

Q        I'm going to show you what's been marked as Plaintiff's Exhibit 1 today.

(Handing.)

Q        It's very similar to one of the previous exhibits with one small exception.

(Witness reviewing document.)

Q        I'm going to show you Plaintiff's Exhibit 1 and I'm going to compare it to Plaintiff's Exhibit 4 previously marked on December 13th and will tell you it appears they're exactly the same with one exception.

On the upper right-hand corner of Plaintiff's 1, there appears to be a date and the number 84162.

Do you know what the number 84162 signifies?

A        No.

Q        Any idea who wrote that?

A        No.

Q        I'm going to show you a document that's been marked as Plaintiff's Exhibit 2. First I'm going to show it to your attorney.

(Handing.)

(Witness reviewing document.)

39

CALVAGNO

Q    I'm going to ask if you recognize the document that has been marked as Plaintiff's Exhibit 2.

A    Yes.

Q    What is that?

A    Notification letter.

Q    A notification letter from whom?

A    From All County.

Q    To whom?

A    Alberto T. Higgs.

Q    What was All County notifying Mr. Higgs of in that letter?

A    That his vehicle was in our storage facility and there were charges incurring.

Q    What was the purpose of sending that letter to Mr. Higgs?

A    We're required to by law.

Q    Is that the sole reason that you sent that letter?

A    That and let them know that their vehicle's there in case they don't.

Q    In the letter, do you notify Mr. Higgs that the vehicle was taken into custody by All County?

40

CALVAGNO

A       Yes.

Q       In the body of the letter it states -- and I quote -- the said motor vehicle shall be released to the owner thereof, or his or her lawfully designated representative upon full payment of all charges accrued to the date that the said motor vehicle was released.

Do you see that?

A       Yes.

Q       So in that letter, did All County notify Mr. Higgs that his vehicle would only be released if he paid the charges that had accrued up to the point of release?

A       Yes.

Q       Was there a schedule of charges he would be required to pay to secure the release of his vehicle?

A       Yes.

Q       Is that the list in the center of the document which is entitled Impound Fee, Administrative Fee, Storage and Tax?

A       Yes.

Q       So All County notified Mr. Higgs with this letter that to secure the release of

41

CALVAGNO

his vehicle, he would be required to pay All County an impound fee of $200, correct?

A    Yes.

Q    And he would have to pay an administrative fee to All County of $35, correct?

A    Yes.

Q    And $350 for storage, correct?

A    Yes.

Q    And tax, correct?

A    Yes.

Q    Who, if anyone, authorized All County to charge Mr. Higgs an impound fee?

A    The contract.

Q    You're referring to Plaintiff's Exhibit 7, correct?

A    Yes.

Q    Referring back to page 37 of Plaintiff's Exhibit 7 --

        MS. BENZIE:  Off the record.

        (Discussion off the record.)

Q    Once again, referring to Plaintiff's Exhibit 7, you testified earlier that Appendix A, which is part of Plaintiff's Exhibit 7,

42

CALVAGNO

contained the charges you were authorized to charge -- when I say "you" I mean All County was authorized to charge -- under your contract with the Village of Freeport, correct?

A    Yes.

Q    Can you tell me if Appendix A authorized All County to charge a $200 impound fee?

A    Yes, right here (indicating).

Q    Did it also authorize All County to charge a $35 administrative fee?

A    No, that's not on this exhibit.

Q    Well, was there some other portion of the contract between All County and Freeport that authorized All County to add a $35 administrative fee to the charges it would seek payment of from the owner to release the vehicle to the owner?

A    No.

Q    Do you know where the $35 administrative fee charge came from?

A    The cost of a certified mail and letter service to run a VIN number to get an owner information.

43

CALVAGNO

Q    But was there anything in your contract with Freeport that said you could charge that?

A    No.

Q    Was there anything in your letter, in All County's letter marked as Plaintiff's Exhibit 2, which told Mr. Higgs that he could immediately secure the release of his vehicle if he paid the charges listed in your letter?

A    Secure the release of his vehicle?

Q    Yes.

     (Witness reviewing document.)

A    No.

Q    So this letter is dated what, what's the date of the letter?

A    November 16th.

Q    In the November 16th letter, you, All County, set forth the charges that All County wanted paid before they would release the vehicle to Mr. Higgs, correct?

A    Yes.

Q    But even if upon receipt of that letter Mr. Higgs then came to All County and offered to pay all of this money, you still

44

CALVAGNO

couldn't release the vehicle to him, correct?

A        Correct.

Q        Because he would also have to pay whatever Freeport wanted and then get a release letter from Freeport to bring to you, correct?

A        Paying I wouldn't know, but release letter, yes.

Q        I'm going to refer to Plaintiff's Exhibit 3, which appears to be the same letter except that in addition to the letter, it has the certified mail and return receipts.

Just so I am clear, in the November 16, 2020 letter, All County provided notice to Mr. Higgs that you had his vehicle, correct, "you" meaning All County?

A        Yes.

Q        And it provided notice of the amount of money that All County would require Mr. Higgs to pay before it would release his vehicle, correct?

A        Correct.

Q        However, even if he showed up the next day and offered to pay all of that money, All County still would not release his vehicle,

45

CALVAGNO

correct?

A    Could not.

Q    Meaning it wasn't permitted to, correct?

A    Correct.

Q    I'm going to show you what has been marked as Plaintiff's Exhibit 4 and ask you if you recognize that document.

(Handing.)

(Witness reviewing document.)

A    Tow slip.

Q    I'm sorry?

A    Tow slip.

Q    What is a tow slip?

A    That's something that a driver would fill out.  Tow driver.

Q    So each time that they towed a vehicle at the request of the Freeport Police Department, would they fill out one of these tow slips?

A    In 2020, yes.

Q    It's a standard form document maintained by All County, correct?

A    Yes.

46

CALVAGNO

Q      A driver would fill that document out, correct?

A      Yes.

Q      And after the driver filled it out, they would sign their name and date it, correct?

A      Yes.

Q      For what purpose would the driver fill out a tow slip?

A      Information off the vehicle to get info, report damage, we'd have a log of knowing who actually towed it.

Q      So are these records maintained in the ordinary course of business of All County?

A      Yes.

Q      Going back to Plaintiff's Exhibit 2, in Plaintiff's Exhibit 2, the notice All County provided to Mr. Higgs, it indicated that the total that was owed as of November 16, 2020 was $635.46, correct?

A      Yes.

Q      Was that accurate at the time?

A      Yes, I believe so.

Q      I'm going to show you what's been marked as Plaintiff's Exhibit 5, first I'm going

47

CALVAGNO

to show it to your attorney.

(Handing.)

(Witness reviewing document.)

A     Okay.

Q     Do you recognize that document?

A     Yes.

Q     What is it?

A     It's a computer copy of the invoice.

Q     All County's invoice?

A     Yes.

Q     It's an invoice for what?

A     For Freeport Police impound for Mr. Higgs' vehicle.

Q     So this is an invoice prepared for Mr. Higgs for the charges that All County charged Mr. Higgs, correct?

A     Yes.

Q     I see the handwritten word "cash"; does that indicate he paid by cash?

A     I don't know.

Q     Well, do you see the stamp that says PAID?

A     Yes.

Q     Do you know what that indicates?

48

CALVAGNO

A    Paid.

Q    So was there a policy, practice or procedure for All County to indicate on an invoice that the invoice had been paid by the vehicle owner?

A    Yes.

Q    What was that procedure?

A    How they would mark it paid you mean?

Q    Yeah.

A    If they -- if the customer paid the impound fees, however he paid it, cash, Master, Visa, credit card, so they would mark it paid.

Q    Upon review of Plaintiff's Exhibit 5, does that reflect that Mr. Higgs paid All County sums for towing and storage and for the impound and administrative fees?

A    Yes.

Q    Does it indicate how much he paid?

A    Yes.

Q    How much did he pay?

A    $1,069.96.

Q    Do you know how All County arrived at the figure of $1,069.96?

49

CALVAGNO

A    By reading this document, yes.

Q    So it looks like All County charged for administrative fee $35, correct?

A    Yes.

Q    And a $200 impound fee, correct?

A    Yes.

Q    And $750 for storage?

A    Correct.

Q    And tax?

A    Correct.

Q    I'm going to ask you to look at what's been marked as Plaintiff's Exhibit 6 on December 13th of 2023 and I ask if you recognize that document.

(Handing.)

(Witness reviewing document.)

A    No.

Q    Drawing your attention back to November 16th of 2020, did All County have any type of policy, practice or procedure of what it would do if the owner of the vehicle that All County had towed and stored at the request of the Village never reclaimed their vehicle?

A    Policy, de -- it would depend on the

50

CALVAGNO

contract.

Q    Well, under this contract you had with the Village of Freeport, if Freeport called you to tow a vehicle and you towed the vehicle, you stored it, you sent the owner a letter like Plaintiff's Exhibit 3 and the owner did not come to pay that money, what did you do with the vehicle?

A    Hold it till it was released by the Village.

Q    How long would you hold it?

A    No set time.

Q    Did there come a time when the vehicles were disposed of?

A    Yes.

Q    How?

A    The Village of Freeport would send us a release to All County and then we would do our paperwork to get rid of the vehicle.

Q    When you say they would send us a release, what form did they send you?

A    I believe it was a release form like that (indicating).

Q    Would it say release it to All

51

CALVAGNO

County?

        A       Yes.

        Q       So the Freeport Police Department authorized All County to release the vehicle to All County, correct?

        A       Correct.

        Q       And then what would you do with the vehicle?

        A       Vehicle would be liened or scrapped depending on years, like whatever the laws are to do that.

        Q       How would the vehicle be liened?

        A       It would hire a lien company.

        Q       What would they do?

        A       They would come down, take photos, go over the vehicle and I guess they publish ads in the paper, I don't know their whole business, but whatever they had to do to give us paperwork to be on the right side of getting rid of the vehicle.

        Q       So you would hire a lien company, they would publish a notice, after which you would do what with the vehicle?

        A       Nothing until we got the lien papers

52

CALVAGNO

back.

Q    What does that mean, what lien papers?

A    From the lien company.

When you put I guess a lien on a vehicle, get lien papers back and then you could auction it or sell it or scrap it.

Q    So you hire a lien company, they would take photographs of the vehicle, you believe they would publish some type of notice in the paper?

A    Correct.

Q    Then they would give you some letter indicating what?

A    That you had a lien on a vehicle.

Q    And then what would you do?

A    The vehicle would be sold at auction or scrapped.

Q    Who would sell it at auction?

A    All County.

Q    When you sold it at auction, what did you do with the money?

A    Put it in the bank.

53

CALVAGNO

Q      So All County kept the money?

A      Correct.

Q      If you scrapped it, what did you do with the scrap money?

A      Same.

Q      At any time prior to selling the vehicle, did you give any of the vehicle owners notice that you were going to sell or scrap their vehicle?

A      They were notified by that letter you showed me or --

Q      Plaintiff's Exhibit 3?

A      Yes.

Q      Okay.

A      And/or the lien company would notify them again when we hired them.

Q      Okay.

A      They always told them.

Q      Who was the lien company?

A      Back then probably JIJ Auctions.

Q      Do you know their address and contact information?

A      No.

Q      I'm going to ask the reporter to

54

CALVAGNO

leave a space in the record to provide the name and address of the lien company.

A    Okay.

** INFORMATION REQUESTED TO BE SUPPLIED:

----------------------------------------

----------------------------------------

Q    At any time prior to your sale of their vehicles, were the vehicle owners afforded any opportunity for a hearing to go before a judge or third party to challenge your right to sell the vehicle?

MR. SENDROWITZ:  Just note my objection.

You can answer.

MS. BENZIE:  Object as well.

A    Unknown to my knowledge.

Q    Do you have any knowledge of whether or not before the Village would send you, All County, a notice authorizing All County to release the vehicle to All County, whether or not the Village afforded the owner of the vehicle any opportunity to object to the release of the Village to All County?

A    I wouldn't know.

55

CALVAGNO

Q     Who would know that?

A     The Village.

Q     During the year 2020, how many such vehicles did All County sell or scrap?

A     I don't know that.

Q     Could it be more than ten?

A     Yes.

Q     Could it be more than 50?

MR. SENDROWITZ:  Just note my objection.

Just for clarity, are we referring to his contract with the Village of Freeport or just in the general sense of things?

MR. CAMPANELLI:  No, the Village of Freeport.

A     It's -- maybe.

MS. BENZIE:  Maybe what?

MR. CAMPANELLI:  Maybe more than 50.

Q     Correct?

A     Yes.

Q     How much time would pass before the Village of Freeport would send All County a

56

CALVAGNO

letter authorizing All County to release a

seized vehicle to All County?

    A      It would vary.  A long time.

    Q      How much is a long time?

    A      Six months plus.

    Q      Do you have any records that would reflect that period of time?

    A      All County would, I would assume.

    Q      Mr. Calvagno, the Village of Freeport sent a letter to my office as part of discovery, which the Village had allegedly sent to Alberto Higgs, advising him:  You are hereby notified that the above described motor vehicle for which you are listed as the last registered owner has been impounded by this department. You are therefore being notified to reclaim this vehicle forthwith.  Your failure to claim this vehicle will not absolve you of your liability to pay the removal and storage charges for this vehicle.

        The Village of Freeport shall acquire title to this vehicle unless claimed within ten days of the above date.  In such event, the vehicle will be destroyed.

57

CALVAGNO

The letter is addressed to Alberto Higgs, the plaintiff in this action and it's dated November 17, 2020.

Do you know whether or not the Village of Freeport would send you release notices releasing vehicles from the Village to All County ten days after it had been seized or towed by All County?

A    No.

Q    You made reference to hiring a lien company to assert liens over vehicles All County had towed for the Village of Freeport which would enable you to sell the vehicles.

Do you know what lien law you were referring to; is it lien law section 184, do you have any idea?

A    No.

Q    Who would know that?

A    Who?

Q    Would know what section of lien law under which All County acquired the ability to sell the vehicles.

MR. SENDROWITZ:  Note my objection.

58

CALVAGNO

You can answer.

Q    If you know.

A    I would assume the lien company.

Q    Well, when the lien company sends you the lien paperwork, would you maintain copies of that paperwork?

A    Yeah, usually I would take their number.

MR. CAMPANELLI:  I'm going to call for production of some of those; I'll do a separate written demand.

MR. SENDROWITZ:  If you could do a separate written demand.

MR. CAMPANELLI:  Okay.

MR. SENDROWITZ:  Taken under advisement.

** INFORMATION REQUESTED AND/OR DOCUMENTS TO BE SUPPLIED:

Q    For the period during which your company provided services to the Village of Freeport from 2018 to 2021, did you comply with all of the requirements of your contract with the Village of Freeport, to your knowledge?

A    To my knowledge, yes.

59

CALVAGNO

Q    To the extent that you withheld vehicles unless and until you got a release form from the Village of Freeport, was that consistent with the terms of your contract with the Village?

A    Yes.

Q    To the extent that you withheld vehicles that you, All County, had towed and stored at the request of the Village and would not release them unless and until the owner paid All County for towing and storage, was that consistent with your contract with the Village of Freeport?

A    Yes.

Q    To the extent than you would ultimately sell some of those vehicles or scrap them, was that consistent with the terms of your contract with the Village of Freeport?

A    Yes.

MR. CAMPANELLI:  I have no further questions.

Thank you very much, sir.

MS. BENZIE:  I have no questions.

60

A C K N O W L E D G E M E N T

STATE OF NEW YORK    )
                     :ss
COUNTY OF            )

I, JOSEPH CALVAGNO, hereby certify that I have read the transcript of my testimony taken under oath in my deposition of February 21, 2024; that the transcript is a true, complete and correct record of my testimony, and that the answers on the record as given by me are true and correct.

_____
JOSEPH CALVAGNO

Signed and subscribed to before me, this            day of                  , 2024.

_____
Notary Public, State of New York

61

E X H I B I T S

PLAINTIFF'S EXHIBITS:

| EXHIBIT NUMBER | EXHIBIT DESCRIPTION | PAGE |
|---|---|---|
| 1 | Copy of Freeport Police Department Motor Vehicle Impound Worksheet | 4 |
| 2 | Copy of All County Towing letter to Alberto T. Higgs dated November 16, 2020 | 4 |
| 3 | Copy of All County Towing letter to Albert T. Higgs dated November 16, 2020 with attachment | 4 |
| 4 | Copy of All County Towing & Recovery tow slip dated 11/10/20 | 4 |
| 5 | Copy of All County Towing & Recovery Release Invoice dated 10-Nov-2020 | 4 |
| 6 | Copy of All County Towing & Recovery Release Invoice dated 10-Nov-2020 | 4 |
| 7 | Copy of VILLAGE OF FREEPORT Contract and Specifications For 2018 TOWING OF VEHICLES | 4 |

62

I N D E X

EXAMINATION BY                                          PAGE
MR. CAMPANELLI                                           5


INFORMATION REQUESTED                                    24
INFORMATION REQUESTED                                    25
INFORMATION REQUESTED                                    54
INFORMATION REQUESTED                                    58

63

CERTIFICATE

STATE OF NEW YORK       )
                        :  SS.:
COUNTY OF SUFFOLK       )

I, JOANN O'LOUGHLIN, a Notary Public for and within the State of New York, do hereby certify:

That the witness whose examination is hereinbefore set forth was duly sworn and that such examination is a true record of the testimony given by that witness.

I further certify that I am not related to any of the parties to this action by blood or by marriage and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 18th day of March, 2024.

_Joann O'Loughlin_
JOANN O'LOUGHLIN